# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### COLUMBUS DIVISION

B.A.Y.,                                         :
                                                :
                    Petitioner,                 :
                                                :
v.                                              :    Case No. 4:25-cv-168-CDL-ALS
                                                :           28 U.S.C. § 2241
Warden, STEWART DETENTION                       :
CENTER, *et al.*,                               :
                                                :
                    Respondents.                :

_____

## REPORT AND RECOMMENDATION

Pending before the Court is Respondents' motion to dismiss Petitioner's application for habeas corpus relief. (ECF Nos. 5, 1).[1] For the reasons explained below, it is recommended that Respondents' motion to dismiss be granted.

## BACKGROUND

Petitioner, who apparently has derivative Eritrean citizenship based on his father's Eritrean citizenship, was initially admitted into the United States on July 21, 2004 as a refugee, and on "January 13, 2006, he adjusted to a lawful permanent resident." (ECF Nos. 5-1, at 1 (citing ECF No. 5-2); 9-1, at 1). In January 2007, he was convicted in the District Court of Oklahoma County, Oklahoma, for assault and battery based on domestic abuse. (ECF No. 5-1, at 1) (citing ECF No. 5-3). In September 2010, "Petitioner was arrested for driving under the influence in the State of Oklahoma." *Id.* On September 27, 2010, he was served with a Notice to Appear charging him with removability under the Immigration and Nationality Act ("INA") Section 237(a)(2)(A)(iii)

---

[1] On October 7, 2025, Petitioner filed a duplicate application for habeas relief under 28 U.S.C. § 2241. *See B.A.Y. v. Warden*, No. 4:25-cv-303-CDL-AGH (M.D. Ga.) ("*B.A.Y. II*"). On October 29, 2025, that case was consolidated into this case. (ECF No. 7).

because, following his admission to the United States, he had been convicted of an aggravated felony as defined in INA § 101(a)(43)(F), namely a crime of violence for which he had been ordered imprisoned for at least one year. *Id.* at 2 (citing ECF No. 5-4). After entering a guilty plea to driving under the influence and being sentenced to a one-year suspended imprisonment sentence, Petitioner entered Immigration and Customs Enforcement ("ICE") custody on November 4, 2010. *Id.* (citing ECF No. 5-5). On December 14, 2010, Petitioner was ordered removed from the United States to Ethiopia by an Immigration Judge ("IJ"), and while Petitioner reserved appeal, he did not file an appeal. *Id.* (citing ECF No. 5-6).

On January 10, 2011, ICE released Petitioner pursuant to an Order of Supervision ("OSUP"). (ECF No. 5-1, at 2) (citing ECF No. 5-7). On August 9, 2019, Enforcement and Removal Operations ("ERO") requested travel documents from Ethiopia. *Id.* Petitioner then interviewed with the Ethiopian consulate on February 12, 2020, and on July 6, 2023, "Petitioner provided an application for travel documents." *Id.*

On February 24, 2025, Petitioner reported to ERO, and he was taken into custody. (ECF No. 5-1, at 2). On September 3, 2025, Petitioner was interviewed by the Ethiopian embassy, and it "was determined that Petitioner's [country] of citizenship may be Eritrea[] as opposed to Ethiopia" because "Petitioner's father was from Eritrea." (ECF No. 9-1, at 1). On November 21, 2025, Petitioner's Eritrean travel document request was submitted. *Id.* at 2. That request remains pending a response to a status update request. *Id.*

On June 3, 2025, the Court received Petitioner's application for habeas relief. (ECF No. 1). On July 18, 2025, Respondents filed a motion to dismiss the habeas application. (ECF No. 5). Despite being notified of his right to file a response to the motion to dismiss (ECF No. 6), Petitioner did not file a response. Respondents' motion to dismiss is ripe for a recommendation.

**DISCUSSION**

Respondents move to dismiss Petitioner's habeas application, contending 1) Petitioner cannot state a claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his claim is premature, and 2) even if the claim is not premature, Petitioner is not entitled to release under *Zadvydas*. (ECF No. 5, at 4-11). Respondents also note that Petitioner challenges his detention because he had previously been released under an OSUP, but Respondents argue that 1) the Court lacks jurisdiction to consider any such claim, and 2) in the alternative, that claim lacks merit. *Id.* at 11-14. The Court agrees that Petitioner's application is premature, and even if it is not, he cannot state a claim under *Zadvydas*, and it recommends that Respondents' motion to dismiss be granted and that Petitioner's habeas application be dismissed. As a result, the Court does not address Respondents' additional arguments.

## I.    Petitioner's habeas application is premature

Because a removal order has been entered, Petitioner's detention is governed by 8 U.S.C. § 1231(a). Under § 1231(a), "when an alien is ordered removed," the Attorney General "shall" remove the alien within ninety days. 8 U.S.C. § 1231(a)(1)(A). This removal period begins to run on the latest of:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). Detention during the ninety-day removal period is mandatory. *Id.* § 1231(a)(2)(A). Moreover, § 1231(a) allows for the continued detention of certain categories of aliens beyond this ninety-day removal period. It provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or

> who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [§ 1231(a)(3)].

*Id.* § 1231(a)(6).[2]

By its explicit terms, § 1231(a)(6) does not limit the length of detention for an alien detained under that section. In *Zadvydas*, however, the Supreme Court of the United States applied the doctrine of constitutional avoidance to "read an implicit limitation into the statute[.]" 533 U.S. at 689. The Supreme Court held that § 1231(a)(6) authorizes post-removal-order detention only for a period "reasonably necessary" to accomplish the alien's removal from the United States. *Id.* at 699-700. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish such removal. *Id.* at 701. The United States Court of Appeals for the Eleventh Circuit has explained that to be entitled to release under *Zadvydas*, an alien must show: "(1) that the six-month period, which commences at the beginning of the statutory removal period, has expired when the § 2241 petition is filed; and (2) evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) (citation and quotation marks omitted); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under *Zadvydas* the alien . . . must show post-removal order detention in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

Respondents argue that Petitioner's habeas application should be dismissed as premature because he has not shown post-removal order detention in excess of six months when he filed his habeas application as required by *Zadvydas*. (ECF No. 5, at 6-7). Respondents' argument is

---

[2] Petitioner falls into this category by virtue of his aggravated felony convictions. 8 U.S.C. § 1227(a)(2)(A)(iii).

premised on Petitioner's removal period beginning on February 24, 2025, when he reported and was taken into custody by ICE's ERO. *Id.* at 6. If this is the appropriate date to commence the removal period, Petitioner's habeas application –received by the Court on June 3, 2025 – is approximately three (3) months premature. Thus, if February 24, 2025 is the beginning point, Petitioner cannot make the six-month post-removal order detention showing required by *Akinwale* and *Zadvydas*, and his petition for habeas relief should be dismissed without prejudice as premature.

However, in his duplicate application for habeas relief that was consolidated into this case, Petitioner argues that he should be given credit for the twenty-eight (28) days he was in ICE custody after his removal order became final on December 14, 2010, when he was then released on January 10, 2011. (*B.A.Y. II* ECF No. 1, at 2-3). The Court need not decide whether Petitioner is entitled to include those twenty-eight (28) days in the time he has spent in post-removal order detention because, even if he is, his application was still filed prematurely by approximately two (2) months. Consequently, the Court concludes Petitioner has failed to show detention in excess of six months as required by *Zadvydas*, and his claim is premature.

## II.   Respondents have rebutted any showing there is no significant likelihood of removal in the reasonably foreseeable future

Even if Petitioner's application is not premature, Respondents have rebutted any showing that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future. Petitioner participated in an interview with the Ethiopian consulate on February 12, 2020, and he applied for travel documents on July 6, 2023. (ECF No. 5-1, at 2). In *B.A.Y. II*, Petitioner asserted under penalty of perjury that Ethiopia rejected his application for travel documents and that ICE is aware of the rejection. (*B.A.Y. II* ECF No. 1, at 3).

In order to address Petitioner's sworn contention that his travel document request had been rejected, the Court ordered the parties to provide supplemental briefing and supporting documentation. (ECF No. 8). Assuming without deciding that Petitioner could show that there was no significant likelihood of his removal in the reasonably foreseeable future based on the alleged rejection of his travel documents, Respondents have presented evidence to rebut any such showing. *See Zadvydas*, 533 U.S. at 701 (requiring the Government to "respond with evidence sufficient to rebut" the petitioner's showing that "there is no significant likelihood of removal in the reasonably foreseeable future").

Specifically, on December 29, 2025, Respondents submitted the second declaration of Deportation Officer Jeffrey Knowles stating that ERO submitted travel documents to Eritrea based on Petitioner's alleged Eritrean derivative citizenship based on his father's Eritrean citizenship. (ECF No. 9-1, at 2). That travel document was submitted to Eritrean authorities on November 21, 2025, with ERO authorities following up via email on December 11, 2025. *Id.* The travel document request remains pending a response to the status update request, Eritrea is open for travel, and ERO is "currently removing non-citizens subject to final orders of removal to Eritrea." *Id.* Petitioner concedes these allegations because he did not respond to the Court's order to address this issue further. As such, the Court finds Respondents have met their evidentiary burden to rebut any showing that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future. Consequently, Petitioner cannot meet his burden to state a claim under *Zadvydas*, and the Court recommends Respondents' motion to dismiss be granted.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Respondents' motion to dismiss (ECF No. 5) be **GRANTED** and Petitioner's application for habeas relief (ECF No. 1) be

6

**DISMISSED WITHOUT PREJUDICE**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. *See* M.D. Ga. L.R. 7.4. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 27th day of January, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE